# In the United States Court of Federal Claims

No. 18-1299C
Filed: October 10, 2019

|  |  |  |
|---|---|---|
| **COLUMBUS REGIONAL HOSPITAL,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | Keywords:  Disaster-Relief Grants, Dismissal, RCFC 12(b)(1), Express Contract, Implied-In-Fact Contract, Third Party Beneficiary |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

*Joshua D. Schnell*, Ice Miller LLP, Washington, D.C., for plaintiff; *Christian H Robertson II*, Ice Miller LLP, Washington, D.C., of counsel.

*Mariana Teresa Acevedo*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant, with whom was *Ramoncito J. deBorja*, Federal Emergency Management Agency, Washington, D.C., of counsel.

## MEMORANDUM OPINION AND ORDER

***HERTLING**, Judge*

Plaintiff Columbus Regional Hospital (the "Hospital") challenges the disallowance and recovery of certain Stafford Act disaster-relief grant funds by the defendant, the United States, acting by and through the Federal Emergency Management Agency ("FEMA" or the "Agency"). The Hospital claims that FEMA breached an express or implied contract, or breached the contract with the State of Indiana to which the Hospital was a third-party beneficiary.  The Agency moved to dismiss the complaint for lack of jurisdiction and failure to state a claim. Because the Hospital has failed to establish the jurisdictional facts that demonstrate it either holds a contract with FEMA or is a third-party beneficiary of the State of Indiana's contract with FEMA, the defendant's Motion to Dismiss (ECF 13) for lack of jurisdiction is granted, and the complaint is dismissed.

## I.    BACKGROUND

### A.    Factual Background

In June 2008, the area of Indiana where the Hospital is located experienced severe flooding.  That flooding caused significant damage to the Hospital's facilities, especially its utility plant, medical and lab equipment, and first floor.  In response to the flood, President Bush

declared under the Stafford Act, a disaster designated as FEMA-1766-DR (the "Disaster Declaration"). *See* 73 Fed. Reg. 35,146 (June 20, 2008). The Disaster Declaration permitted FEMA to provide financial assistance in the form of disaster grants under the Stafford Act.[1]

The parties do not dispute that pursuant to the Disaster Declaration and the Stafford Act, FEMA and the State of Indiana entered into an agreement (the "FEMA-Indiana Agreement" or the "Agreement") for FEMA disaster assistance in Indiana. Under the Agreement, "the State agree[d] to be the grantee for all grant assistance provided under the Stafford Act[.]" (Complaint Exhibit ("Compl. Ex.") 1 at A4, A5 (ECF 1); *see also id.* at A1 (stating that all funding provided is for FEMA-1766-DR).) The FEMA-Indiana Agreement provided that the State "agree[d] to comply with all applicable laws and regulations, including but not limited to . . . [laws and regulations] that govern standard grant management practices[.]" (*Id.* at A5.) The FEMA-Indiana Agreement placed all grant-administration obligations, including an obligation to process recovery of public assistance in the event of error, fraud, or misrepresentation, and to refund any recovered funds to FEMA, upon the State of Indiana. (*Id.* at A1, A6-A8.)

Following the flooding, the Hospital submitted a formal request under the FEMA-Indiana Agreement so that the Hospital could repair its damaged basement and first floor. (Compl. Ex. 2 (ECF 1).) The Hospital's request was granted as Public Assistance Identification No. 005-U0FZF-00, and the State provided the Stafford Act funds, subject to the restrictions set out in the Agreement, including the requirement that the Hospital adhere to the federal grant and procurement regulations at 2 C.F.R. § 215.62. (*See, e.g.*, Compl. Ex. 2 (ECF 1); Compl. Ex. 3 (ECF 1) at A14.) FEMA also documented the Hospital's projects through Project Worksheets, which specifically refer to the FEMA-declared disaster, FEMA-1766-DR. (Compl. Exs. 10-19.) Despite the Project Worksheets, the FEMA-Indiana Agreement made the State of Indiana responsible for "monitor[ing] the Hospital's subgrant activities to ensure compliance with Federal procurement standards." (Compl. Ex. 3 (ECF 1) at A16.)

After receiving disaster-assistance funding, the Hospital contracted with Paul Davis Restoration, Inc. ("Davis") for remediation, McCarthy Building Company ("McCarthy") for hospital reconstruction, Rollins Construction Company, LLC ("Rollins") for a flood-mitigation wall, and Ernst & Young ("EY") for grant administration. The parties do not dispute that these contracts were all subject to FEMA's oversight through the Project Worksheets.

Five and a half years after the flood, FEMA's Office of the Inspector General ("OIG") issued an audit report, detailing its review of the Hospital's contracts with Davis, McCarthy, Rollins, and EY. As a result of the OIG audit, FEMA ultimately disallowed certain costs under each contract (the "Disputed Costs"), totaling about $10.9 million. FEMA disputed the costs of the Davis and McCarthy contracts because both were impermissible cost-plus-percentage-of-cost contracts. *See* Federal Acquisition Regulation 16.102(c). FEMA disputed Davis's 15% markup and McCarthy's 4.5% markup. FEMA disputed the Rollins contract because it was awarded without including required contract provisions, considering small-business subcontractors, and without full and open competition. FEMA recovered the entire contract value. FEMA also recovered the entire contract value of the EY contract, which was awarded without defining the

---

[1] This decision cites the version of the Stafford Act, 42 U.S.C. § 5172 (eff. Oct. 13, 2006 to Dec. 17, 2015), and its regulations in effect at the time of the Disaster Declaration.

scope of work, considering small-business subcontractors, including required contract provisions, and without full and open competition.

In addition to the Disputed Costs, the parties disputed certain other costs, prompting the Hospital to file a district court action in the Southern District of Indiana in 2011. The Hospital alleged that FEMA owed it for (1) replacement equipment purchased new instead of refurbished, contrary to FEMA regulations, and (2) FEMA-eligible damages covered by insurance instead of FEMA funds. The district court granted FEMA's motion for summary judgment on certain counts and dismissed others. On appeal, the Hospital moved to transfer its case to this court. The Seventh Circuit affirmed the Southern District of Indiana's ruling and denied the motion to transfer. *Columbus Reg'l Hosp. v. Fed. Emergency Mgmt. Agency*, 708 F.3d 893 (7th Cir. 2013).

### B. Procedural Background

Following its audit, on December 4, 2013, the FEMA OIG issued an audit report recommending that FEMA recover the Disputed Costs. Despite the Hospital's rebuttal, FEMA recovered the Disputed Costs on April 10, 2014.

The Hospital twice administratively appealed FEMA's recovery of the disputed costs, alleging grounds like those presented in this case. FEMA denied both appeals. This case followed.

The Hospital's complaint, filed in this court on August 28, 2018, raises five counts and seeks $9,612,831.19 in damages, attorneys' fees, costs, and interest, and any other relief that the Court deems just and appropriate. FEMA moved to dismiss the complaint; the parties fully briefed that motion, and the Court heard oral argument on August 13, 2019. The Court granted FEMA's motion to dismiss as to Count V, for illegal exaction, following the oral argument. The Court requested additional briefing, which is now complete, on third-party beneficiary issues.

## II. JURSIDICTION AND STANDARD OF REVIEW

The Tucker Act provides this Court with jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. The Tucker Act "operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)[,]" if those sources of law "'can fairly be interpreted as mandating compensation by the Federal Government.'" *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009) (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)). This Court only has jurisdiction under the Tucker Act when a plaintiff is in privity of contract with the Government. *Park Properties Assocs., L.P. v. United States*, 916 F.3d 998, 1002 (Fed. Cir. 2019), *petition for cert. filed* No. 19-268 (Aug. 29, 2019). The plaintiff bears the burden of proving, by a preponderance of evidence, that the court possesses subject-matter jurisdiction. *Id.*

FEMA moved to dismiss the Hospital's claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). In such cases, to determine jurisdiction, the Court accepts "as true all undisputed facts asserted in the plaintiff's complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff "has the burden of

establishing jurisdiction by a preponderance of the evidence." *Fid. & Guar. Ins. Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015).  If the court finds that it lacks subject-matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

FEMA also moved to dismiss the Hospital's complaint for failure to state a claim, under RCFC 12(b)(6).

## III.   SUMMARY OF THE ARGUMENTS

The crux of the Hospital's claim centers on whether the FEMA-Indiana Agreement is a contract, and whether the Hospital is a party to, or third-party beneficiary of, that contract.  The Hospital argues that it is a party to an express or implied contract with FEMA under the umbrella of the FEMA-Indiana Agreement.  The Hospital also argues that it was a third-party beneficiary of the Indiana-FEMA Agreement.  The Hospital argues that FEMA breached the contract terms by recovering the Disputed Costs because those costs were authorized by an approved agreement, the costs were reasonable, the purpose of the grant was accomplished, and because the Hospital did not materially fail to comply with the Agreement and sought only reasonable and appropriate costs.

FEMA rejects the Hospital's claim that a contract exists, and moved to dismiss on the grounds that this Court lacks jurisdiction over the Hospital's claim because there is no enforceable contract.  First, FEMA argues that the FEMA-Indiana Agreement is a grant from FEMA as a sovereign, the United States has not waived sovereign immunity, and the statutory and regulatory framework the Hospital cites does not create contractual obligations.  Second, FEMA argues that the Hospital does not sufficiently allege the basic contract requirements of offer, acceptance, and consideration, which are required jurisdictional facts.  Third, FEMA argues that if there were a contract, it lacked definite terms.  Alternatively, FEMA argues that even if there were a contract, it would be between Indiana and FEMA, so the Hospital is only a subcontractor, and therefore is not in privity with FEMA.

In response, the Hospital argues that the Court has jurisdiction over its claims because the Hospital has either an express or implied contract, which provides for money damages, and is in privity of contract with FEMA.  Alternatively, if there was no contract, the Hospital argues that it was a third-party beneficiary of the FEMA-Indiana Agreement because it was a foreseeable beneficiary of the Agreement.

Thus, FEMA's motion to dismiss turns on the threshold question of whether the FEMA-Indiana Agreement is a contract, as well as whether the Hospital is party to an express or implied contract with FEMA, or whether the Hospital is a third-party beneficiary to the FEMA-Indiana Agreement.

## IV.   DISCUSSION

### A.   FEMA-Indiana Agreement

As a threshold matter, the Hospital's claims of an express contract or third-party beneficiary status are contingent upon the FEMA-Indiana Agreement being a contract.  The

Court of Claims held in *State of Texas v. United States* that a Disaster Assistance Agreement which meets those basic requirements is a contract because

> the defendant's valid execution of a document, which it prepared and titled "Federal-State Disaster Assistance Agreement," specifying that "Federal assistance will be made available in accordance with (various specified laws, Executive Orders and regulations)" obligates defendant to provide such assistance as called for by the parties' Agreement.

210 Ct. Cl. 522, 527-58 (1967).  The "Federal-State Disaster Assistance Agreement" in *State of Texas* was a contract because it conditioned the receipt of federal funds on compliance with federal procurement regulations.[2]

The FEMA-Indiana Agreement has a similar form to the agreement at issue in *State of Texas*—the Agreement provides the State of Indiana with federal assistance, conditioned upon the State's compliance with federal grant and procurement requirements.  Whatever this Court thinks of the ruling in *State of Texas*, it is bound, until that case is overturned by a higher court, to follow its precedential predecessor court to find that the FEMA-Indiana Agreement is a contract over which the Court has Tucker Act jurisdiction.[3]  Accordingly, the Court must consider the Hospital's express contract and third-party beneficiary claims.

### B.      Express Contract

Counts I and II of the Hospital's complaint allege that FEMA breached its contract with the Hospital.  The existence of an express contract is a jurisdictional fact, which the Hospital as the plaintiff has the burden to prove in order to maintain its complaint for breach of contract against FEMA.  Thus, the Hospital's Counts I and II are contingent upon this Court finding either an express contract between the Hospital and FEMA, or that the Hospital is otherwise in privity of contract with FEMA.  Neither is present here, so this Court lacks jurisdiction over Counts I and II.

---

[2] The Agency argues that the FEMA-Indiana Agreement is an "agreement to agree" because "the recipients of funds are not identified, nor are the amounts to be given."  This characterization is inaccurate.  The FEMA-Indiana Agreement makes clear that the recipient of funds is the State of Indiana.  The Agreement incorporates FEMA's disaster designation, FEMA-1766-DR, which obligates FEMA to provide 75% of the eligible cost of disaster assistance to the State.

[3] The Federal Circuit's decision in *Trauma Services Group v. United States*, is inapposite.  104 F.3d 1321, 1324 (Fed. Cir. 1997).  In *Trauma Services*, the Federal Circuit dismissed the complaint for failure to state a claim when a complaint that a Memorandum of Agreement for health-care services, not including support personnel, did not expressly allow the plaintiff to pass the cost of its x-ray technician to the government.  The Circuit's decision in *Trauma Services* turns on the contents of a contract and does not diminish, let alone displace, the controlling precedent in *State of Texas*.

1.      **Project Worksheets Were Not a Contract**

The Hospital argues that the Project Worksheets, which were issued under the FEMA-Indiana Agreement, constitute a contract and entitle the Hospital to Stafford Act assistance thereunder.  Not so.  An express contract exists when there is mutuality of intent, offer, acceptance, and consideration.  *See, e.g.*, *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).

The FEMA-Indiana Agreement provides that **only** Indiana is the grantee for "*all grant assistance provided under the Stafford Act.*"  Pursuant to the Stafford Act and its implementing regulations, FEMA could only provide Stafford Act funds through the FEMA-Indiana Agreement.  *See* 42 U.S.C. § 5172(a); 44 C.F.R. § 206.44(a); *see also* 73 Fed. Reg. 35,146-02 (June 20, 2008).  Thus, by statute, implementing regulation, and the terms of the Agreement, only the State of Indiana could receive Stafford Act funds as a grantee.  The Project Worksheets support that conclusion by including on each page a header that specifically refers to the Disaster Declaration for the State of Indiana, FEMA-1766-DR, which made the State of Indiana the sole grantee for all Stafford Act funding.  (Compl. Ex. 1 (ECF 1) at A4, A5.)  Further, the Project Worksheets also reflect the State of Indiana's obligations to the Hospital under the Agreement.  (*See* Compl. Ex. 12 (ECF 1) at 341 ("PRIOR TO THE DISBURSEMENT OF APPROVED FUNDS, THE GOVERNOR'S REPRESENTATIVE MUST BE PROVIDED WITH DOCUMENTATION . . ." (capitalization in original).)  By their own explicit terms, the Project Worksheets do not constitute an express contract between the Hospital and FEMA.

2.      **The Hospital Was Not in Privity With FEMA**

Because the Project Worksheets do not constitute an express contract between the Hospital and FEMA, the Hospital must otherwise prove that it was in privity of contract with FEMA under the FEMA-Indiana Agreement to maintain its express contract claims.  A plaintiff must be in privity of contract with the government in order to have standing to sue for breach of contract.  *Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003).  Without that privity, the Court lacks jurisdiction to hear a complaint.  *See Park Properties*, 916 F.3d at 1002; *see also Flexfab LLC v. United States*, 424 F.3d 1254, 1259, 1264 (Fed. Cir. 2005).

Privity is established when "(1) the prime contractor was acting as a purchasing agent for the government; (2) the agency relationship between the prime contractor and the government was established by clear contractual consent; and (3) the contract stated that the government would be directly liable to the vendors for the purchase price."  *Park Properties*, 916 F.3d at 1004.

The Hospital cannot meet any of the elements of privity set out in *Park Properties*.  First, the Hospital does not allege that the State of Indiana was a purchasing agent for FEMA.  The FEMA-Indiana Agreement would not support such an argument because it expressly provided all grant assistance to the State of Indiana, required that the State award grants in accordance with the Agreement, and made the State responsible for grant compliance.  The State of Indiana, not FEMA, bore any contractual liability to subgrantees, including the Hospital.  The Agreement did not create the kind of "direct, unavoidable contractual liability" from FEMA to the Hospital "that establishes privity and thereby waives sovereign immunity."  *See Park Properties*, 916 F.3d at

1004.  The Hospital does not allege the facts necessary to establish a purchasing agency relationship between FEMA and the State of Indiana.

Second, the FEMA-Indiana Agreement established mutual obligations between FEMA and the State of Indiana through standard terms, set out in statute and regulation; it did not create an agency relationship between them.  As above, there was no agency relationship set forth in the Agreement.

Third and finally, the Hospital does not allege that FEMA was directly liable to it for the grant assistance.  The terms of the FEMA-Indiana Agreement make clear that FEMA is solely liable to the State of Indiana for grant assistance, and the State was liable in turn to its subgrantees.  The Agreement also obligated the State, as grantee, to conduct grant-award closeout, including "process[ing] the recovery of assistance through error, misrepresentation, or fraud, or if funds are spent inappropriately."  (Compl. Ex. 1 (ECF 1) at A7.)  While subgrantees, including the Hospital, were subject to FEMA's enforcement powers, even FEMA's audit report identified that the State of Indiana—not FEMA—awarded the Hospital a grant.  (Compl. Ex. 3 (ECF 1) at A14.)  FEMA's limited enforcement actions were solely within the province of "'regulatory or sovereign functions'" which do not "'create contractual obligations.'"  *Carter v. United States*, 98 Fed. Cl. 632, 636 (2011) ("*Carter I*") (quoting *D & N Bank v. United States*, 331 F.3d 1374, 1378-79 (Fed. Cir. 2003)).  The Agreement did not make FEMA liable to the Hospital for any assistance whatsoever.

There is no basis for jurisdiction over the Hospital's express contractual claims when there was no privity of contract between the Hospital and FEMA.

## C. Implied-In-Fact Contract

In Count III, the Hospital alternatively argues that it has an implied-in-fact contract with FEMA, proven by the parties' conduct and the Project Worksheets, and that FEMA breached that implied contract.  For the Court to have jurisdiction over this claim, there must actually be an implied-in-fact contract between the Hospital and FEMA.

The existence of an implied-in-fact contract is a jurisdictional fact which the Hospital, as the plaintiff, bears the burden to prove.  *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003).  Such a contract "with the Government requires proof of (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) 'actual authority' on the part of the Government's representative to bind the Government in contract."  *Turping v. United States*, 913 F.3d 1060, 1065 (Fed. Cir. 2019) (quoting *Hanlin*, 316 F.3d at 1328).  To determine whether an implied-in-fact contract exists, the Court must answer the threshold question of whether there was "an objective manifestation of voluntary, mutual assent."  *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003) (citing *Restatement (Second) of Contracts* § 18 (1981)).  To prove mutuality of intent, the plaintiff must objectively show "the existence of an offer and a reciprocal acceptance."  *Id.*

As discussed above, there was no agreement between FEMA and the Hospital.  FEMA had entered a grant agreement with the State of Indiana, and the State in turn provided a subgrant to the Hospital.  That the Hospital agreed to conditions imposed by the State of Indiana,

regardless of whether those conditions were derived from the FEMA-Indiana Agreement, does not constitute mutuality of intent between the Hospital and FEMA.

Further, the Hospital's agreement with the State of Indiana provided no consideration to FEMA. The Hospital argues that undertaking to comply with FEMA's regulations constitutes consideration, but it ignores the fact that such consideration actually flows to the State of Indiana, which imposed those requirements on the Hospital in the first place. It is true that FEMA imposed those requirements on Indiana in the Agreement, and Indiana had in turn to impose them on subgrantees. The requirement that grantees and subgrantees of federal disaster-relief programs abide by federal statutory and regulatory requirements, without more, cannot establish a contractual relationship between a subgrantee and FEMA. *See D.R. Smalley & Sons, Inc. v. United States*, 178 Ct. Cl. 593, 598 (1967). The Hospital has not met its burden of proving this alleged consideration, and thus has failed to allege a jurisdictional fact. Accordingly, there is no implied-in-fact contract, so this Court lacks jurisdiction over Count III.

### D.     Third-Party Beneficiary Status

Finally, Count IV of the Hospital's complaint alleges that if there is neither an express nor implied contract between the Hospital and FEMA, then in the alternative FEMA breached the Hospital's third-party beneficiary rights under the FEMA-Indiana Agreement. The Hospital argues that it was a third-party beneficiary of the FEMA-Indiana Agreement when the purpose of the Agreement as to provide disaster aid to affected parties, specifically including Bartholomew County and nonprofit hospitals therein, and the Hospital itself is a nonprofit hospital in Bartholomew County. According to the Hospital, its status as a nonprofit hospital in an affected county made it a beneficiary of the binding and legally enforceable obligations imposed on "FEMA, States, their local governments" by the FEMA-Indiana Agreement. 44 C.F.R. § 206.44(a).

Third-party beneficiary status is an "'exceptional privilege' and 'should not be liberally granted.'" *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1056 (Fed. Cir. 2012) (quoting *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912)). To avail oneself of third-party beneficiary status, a party must show that it either is the intended beneficiary of a contract, or "fall[s] within a class clearly intended to be benefited thereby." *Glass v. United States*, 258 F.3d 1349, 1354 (Fed. Cir. 2001) (citations omitted); *State of Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997).

The Supreme Court's decision in *Astra USA, Inc. v. United States*, 563 U.S. 110 (2011), and the Federal Circuit's decision in *Sioux Honey Association v. Hartford Fire Insurance Company Co.*, 672 F.3d at 1056, are instructive here. Both cases involved the rights of third parties to enforce contracts implementing statutory regimes—the 340B program in *Astra* and a trade anti-dumping regime in *Sioux Honey*.

*Astra* involved the 340B program, which gives the Department of Health and Human Services ("HHS") statutory authority to enter into form contracts with drug manufacturers to impose ceiling prices that those manufacturers may charge healthcare facilities for medications. 563 U.S. at 115. The penalty for the drug manufacturers' breach of contract is their termination from the Medicaid program. *Id.* The healthcare facilities that benefit from these lower prices

sued the drug manufacturers, alleging that the manufacturers overcharged them for drugs, and that the healthcare facilities, as third-party beneficiaries of the form contracts, had the right to enforce those form contracts. *Id.* at 117. The Court held that the healthcare facilities were not third-party beneficiaries because the 340B program did not allow for a private right of action, the fact that the healthcare facilities were intended beneficiaries of the 340B program did not confer a right to enforce that intended benefit, and the Court found that private enforcement could hinder HHS's ability to enforce the program. *Id.* at 117, 118, 120.

Similarly, in *Sioux Honey*, the plaintiffs argued that they were entitled to sue importers of foreign products and the U.S. Customs and Border Protection ("CBP") under a statutory anti-dumping regime. 672 F.3d at 1046-47. Under that regime, importers deposit duties and fees, including anti-dumping penalties, with the CBP, often in the form of a customs bond. *Id.* The plaintiffs alleged that the CBP failed to collect customs bonds from certain importers and sought to enforce customs-bond contracts as third-party beneficiaries of the contracts. *Id.* at 1049. The Federal Circuit found that the customs-bond contracts' "(1) treatment of the Government as a beneficiary; (2) failure to identify the domestic producers as beneficiaries; and (3) failure to mention a class of third parties that could potentially compass all domestic producers, all combine to strongly support the conclusions that these contracts do not 'reflect [ ] an intention to benefit' the domestic producers 'directly.'" *Id.* at 1057 (quoting *Glass*, 258 F.3d at 1354; citing *State of Montana*, 124 F.3d at 1273). The Court reasoned that the contracts in *Sioux Honey* were like those in *Astra*—form contracts that are "intertwined with [a] statutory scheme," which in turn does not grant a private right of action. *Id.* at 1058. Thus, the Court found that "where no private right to enforce the [customs-bond contracts] exists, permitting a party to sue as a third-party beneficiary would improperly render 'the absence of [that] private right . . . meaningless.'" *Id.* at 1058-59 (quoting *Astra*, 563 U.S. at 118) (alterations to *Astra* in original).

Like the contracts in *Astra* and *Sioux Honey*, the FEMA-Indiana Agreement implements a statutory regime—the Stafford Act's statutory mandates. The FEMA-Indiana Agreement incorporates the Stafford Act and FEMA's implementing regulations, particularly 44 C.F.R. § 206.44.

The Stafford Act makes clear that FEMA may enter into agreements with states to provide federal disaster assistance, or, as referenced in the statute, FEMA "contributions."[4] *See* 42 U.S.C § 5172(a)(1). The Stafford Act cabins FEMA's ability to aid states by limiting the expenses to which FEMA may contribute, requiring congressional notification before making any contribution, and limiting contributions to "not less than 75 percent of the eligible cost for

---

[4] The Stafford Act also allows FEMA to make "contributions" to "a person that owns or operates a private nonprofit facility damaged or destroyed by a major disaster[,]" 42 U.S.C. § 5172(a)(1)(B), but limits that aid to nonprofit facilities that provide "critical services," including emergency medical care, or nonprofit facilities whose owners applied for Small Business Administration disaster loans and were determined ineligible or whose needs exceeded the loan amount. 42 U.S.C §§ 5172(a)(3)(A), (B). Here, the Hospital does not allege that it was eligible for a contribution as a private nonprofit facility. Instead, the Hospital's allegations relate only to the FEMA-Indiana Agreement.

repair, restoration, reconstruction, or replacement[,]" subject to cost-eligibility determinations. 42 U.S.C. § 5172(a)(4), (b), (e).

FEMA's regulations implementing the Stafford Act make clear that such assistance is paid to the state(s) where the disaster occurred, with the state as the grantee. The regulatory provision incorporated into the FEMA-Indiana Agreement, 44 C.F.R. § 206.44, is titled "FEMA-State Agreements" and provides guidance to states on providing subgrants to entities within the state. 44 C.F.R. § 206.44. The provisions of 44 C.F.R. § 206 also refer to affected entities, termed "applicants," who apply for assistance from the state, rather than from FEMA directly. *See, e.g.*, 44 C.F.R. § 206.202(a) ("This section describes the policies and procedures that [FEMA] use[s] to process public assistance grants to States. Under this section the State is the recipient. As the recipient, you [the State] are responsible for processing subgrants to applicants under 2 C.F.R. parts 200 and 3002, and 44 CFR part 206, and your [the State's] own policies and procedures.").

The FEMA-Indiana Agreement refers to and incorporates the requirements and restrictions of the Stafford Act and its implementing regulations. (*See generally* Compl. Ex. 1 (ECF 1) at A1-10.) The Agreement makes clear that it is an agreement contemplated by, and provided for under, the Stafford Act. The Agreement captures the Stafford Act's statutory obligations. Exhibit A of the Agreement effectuates the Stafford Act's implementing regulations, by identifying the Governor's Authorized Representatives and the State Coordinating Officers. *See* 44 C.F.R. § 206.41. The FEMA-Indiana Agreement's Exhibit B provides the general conditions for the grant, as required by regulation. *See* 44 C.F.R. § 206.44(b) ("This Agreement . . . contains the commitment of the State and local government(s) with respect to the amount of funds to be expended in alleviating damage and suffering caused by the major disaster or emergency. The Agreement also contains such other terms and conditions consistent with the declaration and the provisions of applicable laws, Executive Order and regulations."). The Agreement's Exhibit C provides Disaster Grant Agreement Articles and incorporates the Stafford Act, the Act's implementing regulations at title 44 of the Code of Federal Regulations, and relevant Office of Management and Budget circulars.

Most notably, the FEMA-Indiana Agreement vests responsibility in the State of Indiana for pursing any and all remedial measures, including recoupment. The State of Indiana was required under the Agreement to comply with relevant laws and regulations, administer any and all subgrants, and recover public assistance in the event of error, fraud, or misrepresentation, and refund any recovered funds to FEMA. (Compl. Ex. 1 (ECF 1) at A1, A5, A6-A8 (State of Indiana "shall take necessary action . . . to cooperate with FEMA in any claim or suit in connection with amounts due" for moneys to be returned to FEMA).) The FEMA OIG Audit Report confirmed these terms and directed its recommendations to the State of Indiana, rather than to the Hospital.[5] Neither the Stafford Act, its implementing regulations, nor the Agreement provided a contractual remedy for disallowance of costs.

---

[5] Although the parties do not dispute that FEMA effected the recovery of the Disputed Costs directly, the FEMA-Indiana Agreement made the State of Indiana, rather than FEMA, responsible for pursuing any claims and other recovery efforts.

The Court notes that other decisions of this Court treat third-party beneficiary status differently within the field of government contracts.  In *Carter v. United States* ("*Carter II*"), this Court found that an agreement between the United States Department of Agriculture ("USDA") and the States of Wyoming and Utah for the sale of nonfat dry milk for cattle was not an enforceable contract giving rights to the plaintiff cattle ranchers.  102 Fed. Cl. 61, 69 (2011).  The Court held, however, that the States' orders of nonfat dry milk, and the USDA's acceptance of those orders, created enforceable agreements between the USDA and the States, and that the plaintiff ranchers were third-party beneficiaries of those agreements.  *Id.*  *Carter II* distinguished *Astra* because the statutory scheme in that case was different from the nonfat dry milk program's statutory scheme in that "[t]here was no enforcement mechanism in the [nonfat dry milk] program with which a private remedy could overlap or compete."  *Id.* at 71.  Instead, the nonfat dry milk program "merely allowed [the USDA] to sell any commodity it owned[,]" and subjected the USDA to the same private remedies as any other commercial seller.  *Id.*

As *Astra* and *Sioux Honey*, and unlike in *Carter II*, here there is a statutory enforcement scheme.  In *Carter II*, there was no statutory or regulatory enforcement scheme, so when the USDA acted as any other seller in the market, the Court found that the United States had waived sovereign immunity as to the USDA for claims related to nonfat dry milk sales.  *Carter II*, 102 Fed. Cl. at 66.  Here, by contrast, the FEMA-Indiana Agreement is a grant agreement that conditions the State's receipt of disaster assistance on compliance with relevant statutory and regulatory obligations under the Stafford Act.  The Agreement reflects that neither the Stafford Act nor its regulatory scheme allows for a private right of action, except the limited enforcement by the State.  *Cf. State of Texas*, 210 Ct. Cl. at 527-58.

The FEMA-Indiana Agreement is more like the contracts in *Astra* and *Sioux Honey*, which effectuated the relevant statutes' obligations, identified a class of beneficiaries, and set out remedial schemes available only for specific claims.  While the Hospital, like the healthcare facilities in *Astra* and the domestic producers in *Sioux Honey*, benefited from the contractual obligations in the FEMA-Indiana Agreement, that Agreement did not confer on the Hospital any right to enforce its benefits under the Agreement; instead, the Agreement and the Stafford Act left enforcement to the State.  *See Astra*, 563 U.S. at 118; *Sioux Honey*, 672 F.3d at 1057.  The Stafford Act only provides a right of action for the grantee state to enforce its rights.  Accordingly, the Hospital is not a third-party beneficiary of the Agreement and cannot maintain a suit in this Court against FEMA.

**V.     CONCLUSION**

Because the Hospital lacks an express or implied contract with FEMA, lacks privity of contract with FEMA, and is not a third-party beneficiary to the FEMA-Indiana Agreement, this Court lacks the subject matter jurisdiction to hear the Hospital's claims.  For the foregoing reasons, the Court **GRANTS** the defendant's Motion to Dismiss for lack of subject-matter jurisdiction.  The Clerk is directed to enter final judgment dismissing the complaint.[6]  No costs are awarded.

It is so **ORDERED.**

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

---

[6] Plaintiffs, like the Hospital, claiming a violation of the law by FEMA are not left without judicial review and a possible remedy for such a violation.  They may maintain actions in district court under the Administrative Procedure Act.  Indeed, as noted above at I.A., the Hospital itself pursued such a claim, although it did not succeed on the merits.